## Case No. 15,956.

### UNITED STATES v. ONE STILL.

[6 Int. Rev. Rec. 220.]

District Court, D. Kentucky. Dec., 1867.

##### INTERNAL REVENUE—WHO ARE DISTILLERS.

[Persons who make, by the same process and machinery which distillers use, alcoholic vapor, but do not condense this vapor into spirits or alcohol, and have no machinery adapted to that purpose, but who, on the contrary, conduct it into a large vessel containing a mixture of water, vinegar, and yeast, with which it instantly mingled, are not "distillers," either within the meaning of the 21st or 23d sections of the act of July 13, 1866, or the 16th section of the act of March 2, 1867; nor are they subject to the special tax under the joint resolution of February 5, 1867.]

[This was an information of forfeiture against one still, etc., for alleged violation of the revenue laws.]

BALLARD, District Judge. This is a proceeding by information in which the plaintiffs seek to have one still and one mash tub adjudged forfeited on account of certain violations of the internal revenue laws. The first count in the information is founded on the

23d section of the act approved July 13, 1866 (14 Stat. 153), and the second is founded on the 25th section of the same act. The first count alleges. that on the first day of July, 1867, at the district of Kentucky. the said still and mash tub were used by, and found on the premises of R. T. Durrett, John S. Cain, and D. C. Freeman, who were then and there carrying on the business of distillers, and who had not then and there made payment of the special tax as in that behalf required. The second count alleges, that on the day aforesaid the persons above named did use the said still and mash tub for the purpose of distilling on the premises where vinegar was then and there manufactured. The offenses here charged are certainly embraced by the sections above mentioned, and, therefore, it is unnecessary to quote the sections themselves.

The claimants, in their answer, admit that they own the still and tub seized, and that they have not paid any special tax as distillers, but they deny that they have carried on the business of distillers, as alleged in the first count, or that they have at any time used said still and tub for the purpose of distilling on the premises where vinegar was manufactured, as is alleged in the second count. By agreement of parties a jury was dispensed with, and the cause tried by the court, as provided in the act of March 3, 1865, entitled "An act regulating proceedings in criminal cases, and for other purposes" (13 Stat. 501). All the facts were agreed by the parties, and such of them as are deemed material by me are as follows: "It is further admitted that the process used by claimants conforms to the plan proposed by the specifications annexed to Freeman's patent (paper A), submitted to the commissioner of internal revenue as aforesaid. As to the process used by claimants, it is admitted that the mashing of the grain, the making of the beer. and the generation of the alcoholic vapor is substantially the same as that used by the distiller. But from that point forward the apparatus differs essentially in this; the alcoholic vapor, when produced, is not passed through any worm or cooling medium; nor is any machinery attached or used calculated to condense the vapor into alcoholic spirits. On the contrary the alcoholic vapor passes by pipes into a tank containing vinegar ferment (composed of a mixture of water, vinegar and yeast), and there instantly mingles with and forms part of the ferment, producing at once an aldehydrous liquid, and not alcohol or spirits. The amount of alcohol which enters into the aldehydrous liquid is not exceeding from 5 to 8 per cent. of the liquid produced. The tank in which the alcoholic vapor is mingled with the vinegar ferment has a movable top which renders it unfit for use for the purpose of condensing alcoholic vapor into spirits. If any portion of the alcoholic vapor is condensed into liquid before its contact with the vinegar ferment it is incidental and not intended, as what is claimed as chiefly valuable in Freeman's process is the immediate and intimate mingling of particles produced by the contact of the alcoholic vapor with the vinegar ferment. and the machinery is constructed with the view of producing this result at a temperature as nearly as 80° (the most favorable for oxidization) as can be obtained. The aldehydrous liquid produced is drawn off into vats for further fermentation into vinegar, and is not valuable for any other purpose. There is no complication in the machinery, and it is not furnished with the necessary apparatus for the most indifferent distillery of alcohol or spirits. A fluid produced by distillation containing less than thirty per cent. of alcohol is not a commercial article. Fifty per cent. of alcohol is called 'proof.' The presence of yeast in the liquid would destroy the commercial value as alcohol. It is further agreed that a mixture in any proportions whatever of alcohol or spirits with water will not produce vinegar by mere exposure to the atmospheric air, and that the aldehydrous liquid produced by claimants will turn to vinegar by mere exposure to atmospheric air. It is further agreed that in practice by claimants that they pour into their inner tank about twenty gallons of vinegar and a half gallon of yeast produced on the premises, and then run the vapor into that compound for two and a half hours, when water is added to make the compound measure about five barrels, sometimes the water is added with the vinegar and yeast before the vapor is run in. The latter is claimed by defendants to be the better plan, when they ascertain by practice the proper quantity, but either mode may be used. It is also agreed that the diagram marked section of vinegar apparatus is a fair, substantial representation of claimants' tank and pipes in which the aldehydrous liquid is produced. It is further agreed that either party may read in argument such scientific works as they may deem material to a proper understanding of the subject."

I do not deem it necessary to insert here the specifications of Freeman's patent, because his invention and the method of using it sufficiently appear in the agreed facts already set forth.

The question then arises on the first count. Are the claimants distillers within the meaning of the act of congress? If they are, the property seized must be condemned. If they are not, it must be restored to the claimants. The act of June 30, 1864 (13 Stat. 253), defines a distiller to be "any person, firm, or corporation who distills or manufactures spirits for sale." The similar act of July 13, 1866, contains two definitions—the first on page 117, and the second on page 153, 14 Stat. By the first it is declared "that every person, firm or corporation, who distills or manufactures spirits, or who brews or makes mash, wort or wash for distillation, or the production of spirits, shall be deemed a distiller." By the second, "that every person,

firm or corporation, who distills or manufactures spirits or alcohol by continuous distillation from grain, who brews or makes mash, wort or wash for distillation or the production of spirits, shall be deemed a distiller." The act of March 2, 1867 (14 Stat. 481), contains still another definition. It declares that "every person, firm, or corporation who distills spirits or alcohol, or who brews or makes wort or wash for distillation, or the production of sprits, shall be deemed a distiller."

It is unnecessary to point out the differences between these several definitions, because a proper decision of the present question does not in any respect depend upon such difference. To constitute one a distiller, under any one of the definitions, he must distil or manufacture spirits or alcohol, or he must brew or make mash, wort, or wash for the distillation or production of spirits. It matters not that he brews or makes mash, wort or wash for other purposes, if he does not brew or make them for the distillation or production of spirits, he is not a distiller. True, the act provides "that the making or keeping of grain, mash, wash, wort or beer prepared or fit for distillation, together with the possession of a still, boiler or other apparatus capable of use for distilling upon the same premises, shall be deemed and taken as presumptive evidence that such person is a distiller;" but this, like every other presumption, is of course, liable to be rebutted or repelled by proof of the actual facts.

Now, the agreed facts show that the claimants do not distil or manufacture spirits or alcohol. They make, by exactly the same process and machinery which distillers use, the alcoholic vapor, but they do not condense this vapor into spirits or alcohol, nor have they any machinery adapted to such a purpose. The vapor is not passed through any worm or condenser, such as is used by distillers, but it is taken directly into a large vessel, having a loose cover and containing a mixture of water, vinegar and yeast, when it instantly mingles with and forms part of the ferment, producing at once an aldehydrous liquid and not alcohol or spirits. If it produces neither alcohol nor spirits, what ground is there for contending that the claimants are distillers within the meaning of the acts? They do, it is true, brew or make mash, wash or wort fit for distillation, and they do, by the ordinary apparatus used by distillers, convert this wort, or some of it, into vapor; but they have no apparatus, such as distillers use, to condense this vapor, nor is it in fact so condensed as to form either alcohol or spirits. The facts, then, which would, under the statute, presumptively constitute the claimants distillers, do not exist, or, if such a presumption could be indulged from some of the facts admitted, it is completely repelled by the further admitted fact that neither spirits nor alcohol is produced.

But the plaintiffs insist that the alcoholic vapor which claimants produce, is made by the process of distillation, that it is alcohol, though in the form of vapor, and therefore that the claimants are distillers. In support they refer to Ure's dictionary of the manufactures and arts, title ."Distillation." They quote Dr. Ure as saying that "distillation comprehends the four processes of mashing the vegetable material, cooling the worts, exciting the vinous fermentation, and separating by a peculiar vessel called a still the alcohol combined with more or less water." They assume that Dr. Ure here means by the term "still," that part of the machinery used by a distiller which is called a "still' in common parlance, and is employed only to vaporize the worts; hence they conclude that when the vapor is formed the process of distilling is complete. This argument is based on a misapprehension of Dr. Ure's real meaning. That he does not mean by the term "still" what counsel supposes, that is, simply that part of the machinery by which vapor is generated, is tolerably manifest from his statement "That it is the vessel by which the alcohol is separated," for the machinery by which the vapor is condensed into a liquid is as essential a part of the separating apparatus as that by which it is generated. That Dr. Ure means to comprehend under the term "still" the vapor-condensing as well as the vapor-generating apparatus, I say, tolerably manifest from what he here says, but it is made absolutely certain if we turn to his definition of "still." He defines "still" to be "a chemical apparatus for vaporizing liquids in one part called the 'cucurbit' and condensing the vapors into liquids in another part called the 'refrigeratory,' the general purpose of both combined being to separate the more volatile fluid particles from the less volatile." That is, if possible, made still more certain if we look to the definition of "distillation" to be found in his supplement, page 454. He there says: "Distillation consists in the conversion of any substance into vapor in a vessel so arranged that the vapors are condensed and collected again in a vessel apart." "The word is derived from the Latin 'dis,' and 'stillo,' 'I drop,' meaning originally to drop or fall in drops, and is very applicable to the process since the condensation generally takes place dropwise." This definition accords with that which I find in every dictionary and scientific work which I have consulted. See Webster, Worcester, New American Encyclopedia (volume 7), and Stockhardt's Principles of Chemistry (page 42). See also the report of Commissioner Rollins to the present congress (page 24), where the process of distillation is, I think, more accurately stated than it is by Dr. Ure. "Distillation," then, according to its scientific as well as its popular sense, embraces "condensation." It is its primary meaning, and more nearly expresses the full sense of the term as it is used in

scientific works, and in the statutes of the United States, than the mere generation of vapor. The generation of vapor is not distillation, else every old woman who boils her teakettle is a distiller, and every steamboat is a distillery—not of spirits, it is true, but of water. The chemist or other person who boils sea or other water and thus vaporizes the more volatile parts, and then condenses the vapor into water, is, in truth and in fact, a distiller, and the product is distilled water; but if the vapor be never condensed and collected there is no distillation. The vapor which escapes into the air from every boiling vessel is, in fact, condensed or distilled in nature's laboratory, and falls in the shape of rain or dewdrops; but he who caused the vessel to boil is not in a popular or scientific sense a distiller, because he neither condenses the vapor nor collects the product. Surely, then, if as we have seen, condensation be a part of distillation, the claimants do not make themselves distillers by merely generating alcoholic vapor, for, if they should allow all their vapor to escape into the open air, and never condense or collect it in any form, I imagine plaintiffs themselves would not gravely insist that they would be distillers of alcohol.

The plaintiffs, however, insist that the alcoholic vapor generated by claimants is condensed into alcohol when it comes in contact with the colder liquid in the tank, and, therefore, that claimants are distillers; but they have agreed that it is not condensed into alcohol or spirits, and they cannot be heard to argue against the agreed facts. They have agreed that the liquor in the tank, after the infusion of the alcoholic vapor, is an aldehydrous liquid, and "not alcohol or spirits." Nor does it appear that the alcoholic vapor is first condensed and then mingled with the other liquid; the agreed facts state "that it passes by pipes into a tank containing vinegar ferment, composed of a mixture of water, vinegar and yeast, and then instantly mingles with and forms part of the ferment, producing an aldehydrous liquid, and not alcohol or spirits." Even were it otherwise—were it admitted that the alcoholic vapor, after permeating the vinegar ferment, and before mingling with it, is condensed into alcohol, and that it is there mixed with it mechanically, not chemically—I should hesitate long before pronouncing the process a distillation of alcohol, because the alcohol so produced being, before it is formed, mixed with a large quantity of water and vinegar is not alcohol in the commercial sense, and cannot be made so, if at all, without redistilling the whole compound, and thus separating the alcohol from the other liquid. If, however, the facts were still different, if it were shown that the vapor is condensed into spirits in the pipes leading to the tank which contains the vinegar ferment, and thus it is converted into alcohol before it is mixed with the fer-ment, the question would be quite different. But I cannot decide either of these questions, and I do not wish to be understood as even intimating an opinion respecting them. They are not presented. The agreed facts exclude all idea that the alcoholic vapor is ever condensed into alcohol or spirits, and I only decide on these facts: that the claimants are not distillers within the meaning of either the 21st or 23d section of the act of July 13, 1866, or the 16th section of the act of March 2, 1867.

This disposition of the question arising on the first count, and under the 23d section of the act of 1866, also disposes of the question arising on the second count and under the 25th section. For nothing is plainer than that the term "distilling," used in this section, means a distilling of alcohol or spirits, and, as claimants distilled neither the one nor the other, they are also acquitted of the charge contained in this count. I understand the plaintiffs to substantially concede, that this decision is right if the questions are to be resolved solely by the acts of 1866 and 1867, but they insist, with much apparent confidence, that the decision must be otherwise if reference be had to the joint resolution approved February 5, 1867 (14 Stat. 566). This resolution provides "that alcohol made or manufactured of distilled spirits upon which the taxes imposed by law shall have been paid, and burning fluid made or manufactured from alcohol, or spirits of turpentine, or camphene upon which the taxes imposed by law shall have been paid, shall be and hereby are exempt from tax and so much of section ninety-six of the act of June 30, 1864, as relates to alcohol and burning fluid is hereby repealed, and all products of distillation, by whatever name known, which contain distilled spirits, or alcohol on which the tax imposed by law has not been paid, shall be considered and taxed as distilled spirits."

The argument is, that claimants' vinegar ferment does contain alcohol on which the tax has not been paid, and therefore the whole ferment is to be considered "distilled spirits" by virtue of this resolution. But plaintiffs here again forget that by the "agreed facts" the alcoholic vapor manufactured by claimants is never converted into alcohol, and that no assertion contrary to such fact can be received by the court. The agreed facts, however, do state that "the amount of alcohol which enters into the aldehydrous liquid is not exceeding from 5 to 8 per cent. of the liquid produced;" but this statement must be taken in connection with the other fact admitted, to wit, "that no alcohol is produced," and so taken, it only means, that the infusion of the alcoholic vapor into the vinegar ferment, consisting of water, vinegar and yeast, adds to the volume from 5 to 8 per cent. It cannot mean that the alcoholic vapor is converted into alcohol, for it had just been admitted that it, with the water, vinegar and yeast, is converted into an aldehydrous liquid

and not spirits or alcohol. Supposing, however, the vinegar ferment does contain 5 or 8 per cent. of alcohol, which might, by distillation or chemical process, be separated, it never yet has had separate existence as alcohol in the commercial sense, which is the sense in which I understand the term is used in the statute. But surely the whole vinegar ferment is not a "product of distillation." It is not pretended that more than eight per cent. is such product, and even this pretense, we have seen, when considering the question arising on the first count of the information, is dispelled. And if the vinegar ferment is not a product of distillation, how is it to be considered or taxed as distilled spirits under this resolution? It is only "products of distillation" which, by the terms of the resolution, are to be so considered and taxed. It is not enough that an article contains spirits or alcohol it must itself be a "product of distillation."

The suggestion here made by the plaintiffs, that the spirits contained in the vinegar ferment is a product of distillation, and that it should be considered and taxed as distilled spirits, is only a reproduction of the same matter which we have already noticed in the first part of this opinion. Of course, if the spirits contained in the vinegar ferment is distilled spirits, it is a product of distillation, and is taxable under the statute quite independently of this resolution, but if it is not distilled spirits, which is the fact, as I have before shown, then it is not a "product" of distillation, and I see not how this resolution can apply to it. I am not sure that I know the meaning of the resolution; but I think it means (so far as it relates to alcohol and spirits) this and this only: that alcohol made of distilled spirits on which the tax has been paid shall be exempt from the tax, but that alcohol or other article distilled (thus making it a "product of distillation") from alcohol or distilled spirits on which the tax has not been paid, shall be considered and taxed as distilled spirits. This is all I can make out of it. No other construction, it seems to me, is warranted by the words, or by any supposed mischief intended to be remedied. That it can receive a construction so wide as to hold that vinegar shall be considered and taxed as distilled spirits, if it happen to contain a small portion of alcohol bought regularly in the market, on which the tax has not been paid, is, I think, impossible; and yet this is the construction which must be adopted if plaintiffs' argument have any force. Construing the joint resolution as I do, it has no application to the case before me.

The views here presented are fully supported by the opinion of the learned district judge of the district of Wisconsin in the case of U. S. v. Two Barrels Containing Liquor [Case No. 16,575]. If I were even more doubtful then I am of the correctness of my own conclusions, I would be inclined, for the sake of uniformity, to follow his decision. Upon the whole it is adjudged that the claimants have supported their claim, and are entitled to restitution.